The first case is In Re. Express Mobile, 2023-1076. Mr. Alberti. Good morning, Your Honors. May it please the Court. My name is David Alberti. I represent the appellant, Express Mobile, in this appeal of the rejection and finding of incompleteness based on obviousness of Claim 1 of the 397 patent. Based on the Vandermeer references, the only Vandermeer reference we're concerned with today is the Vandermeer 316 reference. I'll, for shorthand, call that VDM 316. And the heart of this appeal deals with the claim limitation substantially contemporaneously, which both parties had appeared to agree means happening at the same time from a human perspective. Despite that agreement, the record will show that this construction was misapplied to include things that go beyond that. For example, to include things such as requiring some additional user interactions from the time of a selection setting to the time of a display. Could you tone down your voice a little bit? I don't know whether the sound is turned up, but it's quite loud. I'm a loud talker, so I'll do my best to talk a little softly. Before you get into the merits of this, can I just ask you a housekeeping question? Sure. Is this the case where there are some related appeals dealing with the same claim? And if so, I just wondered what the status of those were. There are. I believe this is an ex parte appeal. There is some IPRs that were on appeal, one on the 397 patent, and there's the other. The issue's the same then? Will this case dispose of those cases? No, it's different prior art. And I believe you will hear about the substantially contemporaneously term in the other appeal. So it is relevant, but with respect to how that term is interpreted and applied. However, it would not be dispositive on that issue. So going back to what we'll call the misapplication of that, it is not just a minor error, but a fundamental flaw. And that is because the 397 patent, the entire thrust of that patent is developing a website build tool that allows for what's called a WYSIWYG performance. What you see is what you get. And it does that in real time. And the way it does that is it improved over some prior art technologies, which at the time, and this was a long time ago. Remember, this is late 90s. HTML, Java, and JavaScript would interact. As the 397 patent explains, it was very slow and inefficient. So what the 397 patent did is it developed a runtime engine, sometimes called the build engine, and that allowed the system to have real-time two-way communication, which means, for example, if you drag an image across the website that you're developing, you can actually see that image move. If you can imagine a video game where you have a joystick and you see a character move across the screen as you move that joystick, that would be, in contrast to some of those old, and I might be dating myself, but those old video games where it would be a text-based adventure game where you'd say, type in, pick up the sword, and then you would wait, and your character would then pick up the sword. And you'd say, type in, move forward, and then it would process it, and you'd wait, and your character would move forward. That was the old technology. The new technology, WYSIWYG, the technology that this patent developed, again, allows whatever change you're making to appear in real time to a human user. Where is real-time and WYSIWYG in these claims? It is incorporated within that construction. So if you look at it. Is it the substantially contemporaneous term? Yes, exactly. And you told the examiner or the board to use the construction that certain district courts had used, is that right? That's correct. Did those courts make clear? Did they accept your view that substantially contemporaneously, as they were construing it, incorporated WYSIWYG in real time into the claims? Yes. And if I might direct your honors to Appendix 1811, this is the reasoning of the Spinaco Court. And you'll see here at 01811, these are the sections of the patent that the Spinaco Court relied on. Starting at the 397 patent, 10, 16, through 53, you'll see it talks about the change of settings, which, again, is part of this larger claim term. And it says, the result, immediately processed by a build engine and displayed at the build frame 500. And it repeats this three separate times. So as soon as you change a setting, it's immediately displayed. And then if you go down further, the other section, the Spinaco Court relied on, talks about the polling technique, which is key, too, in the specification to allowing this real time communication. And these emphases are by the court itself. It says, it talks about the polling technique. It calls it the second technique. A polling group is defined in the panels, panel 400, JavaScript, that creates a near continuous, at least from a human perception point of view, dynamic real time link to monitor the events inside the build engine. And then it goes on to talk about the settings. And then it goes on, appendix 1812, based on these excerpts. So it's basing its reasoning on those excerpts. It found contemporaneous to mean happening at the same period of time, and then substantially contemporaneous to mean happening at the same time from a human user perspective. So it's certainly within the understanding of the district court when it adopted that claim construction. And so what is the VDM 316 or the 362, what are they missing? What would they need to have had to satisfy your view of the claim limitation? So interesting, VDM is entirely silent on timing. Unlike the 397 patent, which was directed towards this WYSIWYG real time system, VDM is more concerned about allowing somebody to create an online diary so that you can store things, go back, look at them. You could have your friends look at your diary. There's nothing, nothing at all in VDM that talks about the speed of VDM. In fact, it mentions Java, HTML, JavaScript. But those are the same prior art technologies that the 397 patent talked about and then improved over. VDM doesn't do that at all. And I'll address, because there are two sections, two pieces of VDM that the PTAB relied on. And the first one uses this language, quote unquote, at the same time. And I'll refer your honors to appendix 456 through 457. That's VDM columns 1265 through 1310. And so you can see here in context, it says that the reason that the diary applet must generate an executable program associated with each handle is that there is no other way for the applet to learn when the diary owner has clicked on a handle. And it goes on to say, for HTML, the HTML for diary pages is actually displayed by browser 110. That's because the applet itself doesn't have display capability. So then the key phrase here is it says that the method of figure 4L enables embodiments such as a diary to display and manipulate contents within an HTL document. And at the same time, uses the browser as a vehicle to handle actual display. That does not say that the browser displays changes in real time or displays changes immediately following a change. It merely says that it's used, I would say, more in the colloquial sense that in addition to this applet, you also use a browser for display because as it explained above in that paragraph, the applet doesn't have display capability. So there's nothing about in this sentence that suggests in any way that any change you make will be displayed substantially contemporaneously in real time. That's how the board read it, right? And we have a very deferential review of the board's reading of the prior art, don't we? Well, there is a deferential review. However, it has to be based on some evidence. And here, lack of evidence is not evidence. The fact that it doesn't say how fast it is. Is it not reasonable to read at the same time as meaning substantially contemporaneously from the perspective of a human? Not in this context. Not in this context. Because again, if you read the sentence, it says two things. It enables an embodiment such as a diary to display and manipulate contents within an HTML document. It's talking about a function of the diary. And then it says, at the same time, it uses the browser as a vehicle to display. It doesn't say, at the same time the browser displays. It's just saying it uses it as a vehicle. There's two things, right? And then it even makes it clear, the very next sentence, it says, using the browser avoids having to duplicate the browser functions that interface to the user and that displays in accordance with the HTML. So the at the same time is only talking about avoiding duplicative work by the browser. Counselor, you're into your bottle time. You can continue or save it as you wish. I will save it. Thank you. Good morning, and may it please the court. Peter Sollard on behalf of the USPTO director. Before the court this morning is a single, narrow issue. Does substantial evidence support the board's finding about what the prior art teaches? The answer to that question is yes. Can I ask you the same sort of housekeeping question I asked your friend, which is just what we do here in affirmance, hypothetically, of the eight, any of the cases in the pipeline? I can't answer that question entirely, Judge Prost. I can answer it in part. The related case number is 23-1645. And I do know that it has neared the final stages of briefing. So this case is much farther along than that case. I do know that only claim one is at issue here. I'm not sure about the number of claims at issue in that case, and that's why I'm not sure. Isn't there quite a bit of litigation going on? There is, Your Honor. In the statement of related cases, Mr. Alberti has identified an extensive number of related cases. About 15 or 20 cases? Yes. And the patent here is expired. It is. And obvious is obvious if we affirm that it must govern some of the other cases. That's correct, Your Honor. And as I said, the only question here is one of the extremely narrow and, as Judge Stark pointed out, deferential review about fact-finding by the board with regard to the teaching of the BDM 316 reference. And the board found, as supported by substantial evidence, that BDM 316 teaches that the display is updated substantially contemporaneously with a user's selection of settings. And they pointed to the specific examples described with respect to figures 4i through 4n in BDM 316. They also relied on the process flow chart that's described in figure 4l. And in that chart, we can see that there are two parts similar to what the 397 patent discloses. There's a build engine that's built in, preferably written in Java, and a browser used for the display. And information is continuously being passed back and forth, as shown in figure 4l. And at the close of that description of figure 4l is the passage that you were discussing with Mr. Alberti at the close of his preliminary remarks, which says on APPX 457, column 13, after showing those steps, the divided process, that information is user selection of a handle is detected by the browser and passed to the build engine. The build engine makes the updates to the code and passes it back for display. That's where we get to the sentence starting at column 13, line 3, that begins, the method of figure 4l enables embodiments, such as a diary, to display and manipulate contents within an HTML document, and at the same time, uses the browser as a vehicle to handle the actual display and diary owner input. Using the browser avoids having to duplicate the browser functions that interface to the user and that display pages in accordance with HTML. This clearly supports the board's finding that the build engine and the display are working hand-in-glove to provide a seamless experience for the user, providing input who's editing their web page in real time. Even though Mr. Alberti took us to that specific sentence, he also argues that the VDM reference does not disclose anything about timing. What's your response to that? I would say that one of ordinary skill in the art being this patent and the passage that we've just discussed, in particular, the way that the process steps occur in figure, as described in figure 4l, and then the closing statement that those processes are happening in concert at the same time. One of ordinary skill would understand that to mean substantially contemporaneously. In other words, without visible delay from a human user's perspective. Thank you. Everything in the VDM 316 reference supports that reading. There's nothing that, to the contrary, that supports that there is some noticeable or obvious delay in the processing of user selections before they are displayed. What about the references to eventually regenerated or updating periodically? Why are those not indications of some sort of humanly perceptible delay? Right, Your Honor. As the director explained in her brief with regard to eventually, that's made in the specific context of describing the move object example that's shown in figures 4j and proceeding, where there's a smiley face. And so what it says is you have this window where you can manipulate the smiley face picture object. And one of the buttons you can use is move object down. And so what it says in that sentence, again, that's still on APTX 457 column 13, says starting at line 22, if the diary owner indicates via several presses of button 493, that's where we talked about the Scribner's error, of figure 4i that the content object is to move to the bottom position. Applet 112 will eventually regenerate the diary page to look like the diary page in figure 4m. So VDM 316 doesn't show all those intermediate steps. It doesn't put in five different things, each showing the smiling face moving down one position. It jumps from the start to what it will look like at the end. And that iterative process is the reason for using the word eventually. Because the user is seeing it move each time, eventually it will wind up at the final view. There's also a similar argument about the word finally occurring in figure 4l. That, I think, carries even less weight because it's just a set of bullet points there describing the processing steps to move the picture object. And the last one, as we would often do in legal writing in a conclusion, starts with finally. There's nothing to indicate that that is somehow to be associated with a lapse of time, particularly a lapse of time that would be perceptible by the user. The patentee makes repeated reference to unrebutted expert testimony. I assume they're correct that only they presented an expert. And of course, at the re-exam, is that not always the case? And what do we do with that? That is the case, Your Honor. It is an ex parte proceeding. The patent office does not typically have a rebuttal expert witness. But the board did consider the expert witness testimony here. And as is its job to do, look to the reasoning and the basis for the expert's opinions and found it was not credible. And as we pointed out in the director's brief, this court defers to the board's findings about credibility of the expert and the expert opinion. And the board quite thoroughly looked at Mr. Redock's, that's Express Mobile's expert, his testimony and found it was conclusory. It just made assertions about how fast things happened in the 397 versus BDM 316 without backing that up with citations to the patents that would support those conclusions or, in particular, numerical analysis that might support that somehow one is much faster than the other from the viewpoint of one of ordinary skill in the art. And so the board quite rightly found that that testimony was not credible or persuasive. We've never said that in a re-exam, ex parte re-exam, the board must accept the expert opinion of the patentee just because it's unrebutted in some sense, correct? No, that's right, Your Honor. It may be harder to disregard unrebutted testimony, but in any case, this court has said the board always has an obligation to examine expert testimony and determine whether it is credible and reliable, even when it's unrebutted. There are no further questions. You have the remainder of my time. Thank you, counsel. Mr. Alberti has a little rebuttal time. Thank you, Your Honors. I'd first like to address the issue about Mr. Weddock's testimony. You are correct. It was completely unrebutted and seemingly disregarded for no legitimate reason, I would say, because that testimony was consistent,  And I think that's a good thing. that the prior art build process using HTML in order to build and rebuild using that prior art technology that's discussed in the 397 patent that is improved over was slow and ineffective. The 397 patent says that. Mr. Weddock says that. In fact, and we'll get to this later, but the fact that his testimony is And specifically said, for example, in Appendix 1735, Paragraph 107, that the use of eventually would not mean immediately after it or at the same time, because in the implementation of VDM, that's owing to the delay involved in building and rebuilding the HTML at the time of VDM or the 397 patent. So it's tying the 397 patent discussion directly to the prior art at the time and the slowness of VDM. And again, just to repeat, the absence of evidence is not evidence. It seems that the director's point is, well, the fact that it doesn't say anything about timing, a person of skill in the art would understand that it would be faster, substantially contemporaneous. But that's not true, because the only evidence of record is the 397 patent itself, which explains why that technology was slow. The expert who confirms that and confirms that that is not in VDM. And I'll go even further to point out that the director's brief is consistent with that as well. It refers on pages four and five. It says, in addition to runtime files, including a runtime engine, they're generated to allow the web page to be drawn using the information in the database. To view a completed web page in internet's user's browser calls a runtime engine, which uses the database and other runtime files to generate the web page. Using a runtime engine instead of static code allows for the dynamic generation of HTML code based on real time conditions. So even the director concedes that this technology in the 397 allowed for real time display. Contrast that to VDM. VDM doesn't say real time. VDM doesn't say immediately displayed. All VDM says is eventually, or finally, or after some unknown point in time. Again, that's not evidence of substantially contemporaneous. And given I'm running out of time, if the court has any further questions, I'll answer them. Thank you, counsel. The case is submitted. I can't say it was applied as substantially contemporaneously, but in due course. Thank you, Your Honor.